IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL ACTION NO. 3:01-CR-00016-GCM

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYE LANFORD SARRATT,<br><br>Defendant. | **ORDER** |

**THIS MATTER** comes before the Court on Defendant Tye Lanford Sarratt's second pro se Motion for Compassionate Release (ECF No. 54). The government filed a response (ECF No. 60). Defendant filed a reply (ECF No. 61). The matter is now ripe for disposition. For reasons discussed in more detail below, the Court will deny the motion.

### I. BACKGROUND

Tye Lanford Sarratt is a 40-year-old federal inmate serving a 308-month sentence for his role in two carjackings. In October of 2000, a man in Gastonia, North Carolina "agreed to give a ride to three young men, whom he recognized from the neighborhood." ECF No. 49 ¶ 5. Sarratt was one of the young men. During the drive, Sarratt—then 18 years old—"pulled a pistol and placed it to [the victim's] head while demanding that he surrender his vehicle, a 1995 GMC Suburban truck." *Id.* A struggle ensued, and the driver attempted to flee. *See id.* As he turned to exit, he was shot in the back. *See id.* The driver was "paralyzed from the chest down as a result of [a] wound to the spinal cord." *Id.*

Four days later, Sarratt and another young man carjacked two other individuals in DeKalb County, Georgia. *Id.* ¶ 6. The victims reported that their Buick was taken at gunpoint, and that Tye Sarratt was the gunman. *See id.* Sarratt and his co-defendant, Rodney Kendrick, surrendered to

police on October 24, 2000. *Id.* ¶ 7. Each defendant accused the other of shooting the Gastonia man. *Id.*

A federal grand jury indicted Sarratt, charging him with (1) carjacking and aiding and abetting the same, in violation of 18 U.S.C. §§ 2119(2) and 2; and (2) using and carrying a firearm during and in relation to a crime of violence and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2. ECF No. 1 at 1–2. Sarratt pled guilty to both offenses. ECF No. 21 & 22.

The United States Probation Office prepared a presentence report. Because Sarratt had previously been convicted of two counts of attempted breaking and entering, the probation officer classified him as a career offender under U.S.S.G. § 4B1.1. ECF No. 49 ¶ 23. The classification was significant, catapulting Sarratt's total offense level on the carjacking offense from 22 to 31.[1] *See id.* ¶¶ 20, 22–25. As a result, Sarratt's Guidelines sentence for the carjacking offense was 188 to 235 months, instead of 70 to 87 months.[2] *See id.* ¶ 54. With a ten-year mandatory minimum sentence for violating 18 U.S.C. § 924(c), Sarratt faced a Guidelines sentence between 308 and 355 months. *Id.* ¶ 54. At sentencing, the Court imposed a low-end sentence of 308 months. *See* ECF No. 38 at 2.

In May 2021, Sarratt filed his first pro se motion for compassionate release. *See* ECF No. 52. That motion was denied because Sarratt did not specify any grounds for release other than an unspecified "extraordinary family and sentence issue." ECF No. 53 at 3. In September 2021, Sarratt filed the present motion. This time, Sarratt explained the grounds for his motion, identifying three "extraordinary and compelling reasons" for release: (1) family hardship; (2) the risk of

---

[1] This includes a three-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.
[2] This calculation provides for an offense level of 25 and a criminal history category of III. *See* ECF No. 49 ¶¶ 22, 35. The 2000 Guidelines Manual was used. *Id.* ¶ 13.

contracting the Delta variant of COVID-19; and (3) the fact that he would not have been sentenced as a career offender if sentenced today.

## II. DISCUSSION

In resolving Sarratt's motion for compassionate release, the Court first identifies the applicable legal standard. Next, the Court considers Sarratt's "extraordinary and compelling reasons" for a sentence reduction, finding that one ground is meritorious. Finally, the Court conducts an "individualized assessment" of Sarratt's motion, and concludes that a sentence reduction is not warranted under the 18 U.S.C. § 3553(a) factors.

### a. Legal Standard

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), authorizes courts to reduce a defendant's sentence on the motion of the defendant if (1) "extraordinary and compelling reasons" warrant a reduction; (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the Section 3553(a) factors merit a reduction. *See* 18 U.S.C. § 3582(c)(1)(A).

Courts presently enjoy significant discretion in determining what qualifies as an "extraordinary and compelling reason" for release. In *United States v. McCoy*, the Fourth Circuit explained that "district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." 981 F.3d 271, 284 (4th Cir. 2020) (cleaned up). That is because—moving to the second requirement for granting compassionate release—there currently are no applicable policy statements issued by the Sentencing Commission.[3] *Id*.

---

[3] Courts may (but need not) refer to U.S.S.G. § 1B.13, which governs BOP-filed motions for compassionate release. *McCoy*, 981 F.3d at 282 n.7. The commentary to that section identifies factors like the medical condition of the defendant, the age of the defendant, and family circumstances. *See* U.S.S.G. § 1B.13 cmt. 1.

Even if a defendant shows "extraordinary and compelling reasons," a trial court must still make an "individualized assessment" of each defendant's sentence, comprising a "full consideration of the defendant's individual circumstances." *Id.* at 286. That assessment revolves around consideration of the so-called § 3553(a) factors. Under the compassionate release statute, courts must consider the factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable" in deciding whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id.* § 3553(a). Courts may also consider, as part of the individualized assessment, a defendant's relative youth at the time of his offense, the length of the sentence that has already been served, and the institutional records and rehabilitative steps taken by each defendant while incarcerated. *McCoy*, 981 F.3d at 286.

### b. Analysis

The Court now applies the legal standard discussed above to the facts of Sarratt's case.

### i. Extraordinary and Compelling Reasons

Sarratt asserts three "extraordinary and compelling reasons" for release.[4] First, he argues that his father's death in December 2020 created substantial financial hardship for his daughter.

---

[4] Sarratt raises the Delta variant argument solely in an affidavit made in support of the motion. Because courts must liberally construe pro se pleadings, the Court will consider this argument as if it were raised in the motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (instructing courts to construe pro se documents liberally).

4

Second, Sarratt argues that the Delta variant of the COVID-19 virus presents heightened risk to him. *See* ECF No. 54-1 at 5 ("The more contagious delta variant . . . has been killing people, every day and the exact same events are taking place in this institution."). Finally, Sarratt argues that he would not be classified as a career offender if sentenced today.

### 1. Family Hardship

Sarratt first urges the Court to reduce his sentence because his father's death in December 2020 created financial hardship for his daughter. ECF No. 54 at 2. In an affidavit made in support of the motion, Sarratt's adult daughter explains that her children have special needs, and that her departed grandfather was financially supporting the children before he passed. ECF No. 54-1 at 2. Although the Court is deeply sympathetic with the plight of Ms. Sarratt, family hardship is normally not a cognizable "extraordinary and compelling reason" for release because it nearly *always* attends a carceral sentence. *See United States v. King*, 522 F. Supp. 3d 249, 254 (W.D. Ky. 2021) (quoting *United States v. Mojica*, 19-CR-629 (CS), 2020 WL 6746478, at *1 (S.D.N.Y. Nov. 16, 2020)) ("[H]ardship on the family almost always results from serious criminal conduct, and rarely rises to the level of extraordinary and compelling."); *cf. United States v. Castro-Ospitia*, 266 F. App'x 480, 483 (7th Cir. 2008) ("[B]ecause it is expected that a family will suffer when one of its members is imprisoned, family circumstances generally are not relevant to a district court's choice of sentence.").

"Extraordinary and compelling reasons" may exist, however, when the caregiver of the defendant's minor child dies or becomes incapacitated. *See* U.S.S.G. § 1B1.13 cmt. 1(c). That is not the case here: the defendant's child is an adult, not a minor, and there is no indication that Sarratt's father was serving as the primary caregiver for Sarratt's grandchildren. *See* ECF No. 54-

1 at 2. As a result, Sarratt's family hardship does not constitute "extraordinary and compelling reasons" for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

### 2. COVID-19 Risk

Sarratt next argues that the Delta variant constitutes an "extraordinary and compelling reason" for a sentence reduction.[5] The Court disagrees. Sarratt does not claim to be immunocompromised or otherwise at elevated risk for serious illness from COVID-19. On the contrary, his relatively young age probably puts him at low risk of hospitalization or death.[6] What's more, Sarratt likely has some level of protection afforded by natural immunity, as his record indicates that he recovered from COVID-19 in February 2021. *See* ECF No. 54-1 at 7. Finally, the widespread availability of vaccines and therapeutics has dramatically reduced the threat that the virus poses to most individuals. *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (Easterbrook, J.) ("Today . . . vaccines provide a much better defense against infection than any judicial order could do.").

### 3. Career Offender Status

The Court now addresses Sarratt's third argument: that he would no longer be classified as a career offender if sentenced today. Sarratt argues that his state convictions for attempted breaking and entering would no longer qualify him for career offender status. As the government concedes, he is correct.

---

[5] Between the time that Sarratt filed his motion and the present day, the Omicron variant replaced the Delta variant as the predominant strain of coronavirus. *See* Vanessa Romo, *The CDC Slashes Estimates of Omicron's Prevalence in the U.S.*, NPR (Dec. 28, 2021), https://www.npr.org/2021/12/28/1068643344/cdc-omicron-covid-19-delta-revise-estimates (noting that Omicron was the dominant variant as of December 2021).

[6] The death rate for a vaccinated individual of Sarratt's age is 0.11 deaths per 100,000 people. Caitlin Owens, *Age Is Still a Huge Coronavirus Risk Factor*, Axios (Oct. 19, 2021), https://www.axios.com/age-coronavirus-risk-vaccines-2e1391b0-5d0e-4fa9-894b-4b894dc017c9.html.

A defendant may be classified as a career offender if (1) the defendant was at least eighteen years old at the time of the offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1. A felony is an offense "punishable by . . . imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." *Id.* § 4B1.2 cmt. 1.

In *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc), the Fourth Circuit drastically changed the way that courts determine whether prior state convictions qualify as felonies. After *Simmons*, "a prior conviction under North Carolina law is punishable by more than one year of imprisonment only if the defendant's conviction, based on his individual offense characteristics and criminal history, allowed for such a sentence." *Miller v. United States*, 735 F.3d 141, 144 (4th Cir. 2013) (describing the holding in *Simmons*).

As a reminder, Sarratt's career offender classification hinged on his two North Carolina convictions for attempted breaking and entering. *See* ECF No. 49 at 7. In North Carolina, felony sentences are primarily a function of the classification of the offense, coupled with an offender's prior record level. *See Simmons*, 649 F.3d at 240. The offense in question, attempted breaking and entering, is a Class I felony. *See* N.C. Gen. Stat. §§ 14-2.5, 14-54. As for Sarratt's record, at the time of his first state conviction, he had only a single misdemeanor conviction, yielding a one-point prior record level. *See* ECF No. 49 ¶ 30; N.C. Gen. Stat. § 15A-1340.14(b)(5). As a result, Sarratt's first conviction for attempted breaking and entering would have been presumptively punishable by four to six months, with community punishment authorized. *See* N.C. Gen. Stat. § 15A-1340.17(c). That is exactly what the state trial judge imposed: a four-to-six month suspended

sentence. Because Sarratt's first predicate conviction was not punishable "for a term exceeding one year," Sarratt could not be sentenced as a career offender today.[7]

The question is whether this fact presents an "extraordinary and compelling reason" for a sentence reduction under the compassionate release statute. In a recent case, the Court concluded that it does. *See United States v. Reyes*, Criminal Action No. 3:04-cr-00161-GCM-DCK, 2021 WL 5909849, at *4–5 (W.D.N.C. Dec. 14, 2021). Here, as in *Reyes*, the application of the career offender guideline resulted in a far more punitive sentence than would be available today. Sarratt has accordingly established "extraordinary and compelling reasons" supporting a sentence reduction.

### ii. Applicable Policy Statements

The Court next considers applicable policy statements. As the Fourth Circuit ruled in *McCoy*, there are presently no applicable policy statements to consult under 18 U.S.C. § 3582(c)(1)(A). 981 F.3d at 283.

### iii. Section 3553(a) Factors

As a reminder, the fact that Sarratt has established "extraordinary and compelling reasons" does not automatically entitle him to a sentence reduction. Rather, compassionate release determinations are a product of "individualized assessments" of each defendant's sentence, which take into consideration the § 3553(a) sentencing factors. *McCoy,* 981 F.3d at 286.

#### 1. Nature and Circumstances of the Offense

---

[7] The Court does not consider whether Sarratt's second conviction for felony breaking and entering would satisfy the requirements as a predicate offense. That is because Section 4B1.1 requires *two* felony convictions. *See* U.S.S.G. § 4B1.1(a). Nor does the Court consider whether attempted breaking and entering in North Carolina is a "crime of violence," as it is unnecessary in light of the preceding analysis.

8

The Court begins with the nature and circumstance of the offense. *See* 18 U.S.C. § 3553(a)(1). This factor carries significant weight. Sarratt was directly involved in two violent crimes, one of which inflicted a severely disabling injury on its victim. During one of two violent carjackings, Sarratt or his co-defendant shot a victim in the back, paralyzing him from the chest down. ECF No. 49 ¶ 5. The violent nature of this crime, coupled with the permanent harm that it inflicted, weighs heavily against a sentence reduction.

### 2. History and Characteristics of the Defendant

Next, the Court turns to the history and characteristics of the defendant. Sarratt was an adult—age 18—at the time that he committed his offenses. He is currently 40 years old. *See* ECF No. 49 at 2. Because this age is associated with a moderate reduction in the likelihood of recidivism, this characteristic weighs slightly in favor of a sentence reduction. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* 26 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (recording rearrest rates for federal offenders aged 40 to 49 at 52.8 percent, compared to 68.1 percent for offenders younger than 30).

Sarratt's record in prison has been mixed. His records show 16 disciplinary infractions, with seven infractions since 2019. ECF No. 60-1 at 1. The recency of Sarratt's infractions is concerning, indicating that Sarratt may not yet be able to conform his conduct to the rules and expectations of society. But Sarratt has also engaged in significant work and educational programming in prison, including drug treatment, parenting classes, and completion of a GED. *See* ECF No. 54-1 at 6–7. This would tend to suggest that Sarratt has actively sought rehabilitation and personal growth. On balance, the Court finds this factor inconclusive.

### 3. Propriety of the Sentence

The Court now considers whether the sentence imposed adequately (1) reflects the seriousness of the offense; (2) promotes respect for the law; (3) provides just punishment for the offense; (4) affords adequate deterrence to criminal conduct; (5) protects the public from further crimes of the defendant; and (6) avoids unwarranted sentence disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a). The Court concludes that the present sentence is appropriate.

In all, Sarratt was sentenced to 308 months—about 25 years—as punishment for two violent offenses that resulted in the permanent paralysis of a victim.[8] That sentence was sufficient, but not greater than necessary, to accomplish the sentencing goals advanced by § 3553. While more punitive than what is presently authorized, it nevertheless adequately reflected the seriousness of Sarratt's offenses and provided just punishment for the same.

### III. ORDER

**IT IS THEREFORE ORDERED** that the Motion for Compassionate Release (ECF No. 54) is **DENIED.**

**SO ORDERED**.

Signed: January 24, 2022

Graham C. Mullen
United States District Judge

---

[8] Sarratt is projected to be released in May of 2023, and may be eligible for home detention in November 2022. *See* ECF No. 54-1 at 11.